UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

KIMSHU CARY and her husband,         )
PETER CARY                           )
                                     )   No. 1:09-0064
v.                                   )   JUDGE CAMPBELL
                                     )
THE KROGER COMPANY, INC., et al.     )

MEMORANDUM

I. Introduction

This negligence case arose after Kimshu Cary ("Plaintiff") fell in the parking lot of the Kroger grocery store located on James Campbell Boulevard in Columbia, Tennessee. Plaintiff seeks damages for injury to her ankle, foot, and leg. Plaintiff's husband, Peter Cary, seeks damages for loss of consortium. The defendants, The Kroger Company, Inc., and Kroger Limited Partnership I, Ohio business entities registered to do business in Tennessee (collectively "Kroger"), filed a Motion for Summary Judgment (Docket No. 14), which is fully briefed.

II. Factual Background

The Carys are frequent customers of the Kroger store on James Campbell Boulevard in Columbia. At approximately 10:40 a.m., on May 20, 2008, Plaintiff visited the store on her lunch break. Due to construction, she parked near the pharmacy drive-through rather than in her normal spot near the front of the store. As Plaintiff left the store with her purchase and walked to her car, she watched for traffic passing on the main drive in front of the store and leaving the pharmacy. She did not look at the ground as she walked. Her foot hit something hard and she tripped and fell. Plaintiff alleges that she tripped on a speed bump.[1] The speed bump was not

---

[1] According to Defendants, the parties agreed that the rise in the parking lot was not a speed bump, and the parties would refer to it as a "hump." (Docket No. 15 at 3 n.3.) Plaintiffs deny knowledge of any such stipulation.

1

painted, and it was the same color as the surrounding black pavement.[2]  Plaintiff fell at the end of the speed bump farthest away from the store near the parking spaces.  She had not noticed the speed bump before, and she did not recall if she had walked by that area during other visits to the store.  (Docket No. 16 at 11-13, Plaintiff's Depo. at 34-35, 43; Docket No. 21-1 at 16-18, 57, 133-134, Plaintiff's Depo. at 38, 43-44, 62-64; Docket No. 15 at 119.)

A store clerk, Josh Duncan, was sitting outside taking his break when Plaintiff fell.  He thought he heard a scream, and when he looked up, he saw Plaintiff starting to fall, but he could not say which direction she fell to the ground.  He ran to assist her.  In a supplemental witness statement completed after the incident, Duncan wrote: "The lady was walking to her car triped (sic) on a speed bump."  (Docket No. 15 at 95.)  According to Plaintiff, Duncan told her that she fell on a speed bump.  (Docket No. 21-1 at 17, Plaintiff's Depo. at 63.)

Duncan testified that, at the time of the incident, he thought Plaintiff fell on a speed bump, but he later discussed the "little rise" in the parking lot with Kroger co-manager Janet Van Dyke and Kroger's attorney, and decided that "[w]e don't know if it's a speed bump at one time or what it is that's been removed now[.]"  (Docket No. 15 at 104, Duncan Depo. at 13; Docket No. 21-1 at 3-4, Duncan Depo. at 20-21; Docket No. 21-1 at 42, Duncan Depo. at 8.)

In May 2008, when Plaintiff fell, Duncan had been working at the Kroger store over two years.  He described the parking lot as "pretty busy" because traffic comes in from James

---

[2]After Plaintiff's fall, in July 2008, Kroger painted the area yellow when the rest of the parking lot was painted and striped.  (Docket No. 16 at 17, Van Dyke Depo. at 21; Docket No. 21-1 at 124; Docket No. 21-1 at 23, Jenkins Depo. at 37.)  Evidence of subsequent remedial measures, however, is not admissible except "when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment."  Fed.R.Evid. 407.  It is undisputed that Kroger owned and controlled the parking lot, and Kroger did not controvert the feasibility of painting the speed bump.  Therefore, the Court will not consider as admissible evidence the fact that Kroger subsequently painted the speed bump.

2

Campbell Boulevard, and there is also a connector to another road behind the store that people use constantly. There is no crosswalk in front of the store; just a road and a parking lot. When Duncan enters and leaves the store, he watches for cars because sometimes drivers like to speed through the parking lot. He usually parks his car near the pharmacy in the area where Plaintiff fell. Since he started working for Kroger, Duncan has driven over the area where Plaintiff fell and he can feel a light bump with his vehicle. When he walks on or by the area, however, he does not notice anything. He claims that if you are standing on the parking lot, you cannot see the bump unless "you get almost to the ground." Duncan is not aware of any other fall that occurred in the parking lot except Plaintiff's. (Docket No. 16, Duncan Depo. at 11; Docket No. 21-1 at 43-45, Duncan Depo. at 6, 8, 25; Docket No. 21-1 at 51-52, Duncan Depo. at 18-19.)

Kroger's manager on duty, Richard Jenkins, was called to the parking lot after Plaintiff fell. When Jenkins got to the parking lot, Plaintiff was sitting at the end of an elevated area near the parking spaces, and a first responder fire truck had arrived. Jenkins asked Plaintiff if she was okay, and she replied, "I'm just so embarrassed." Jenkins asked Plaintiff what happened, and she told him she tripped and fell, hurting her leg and elbow. (Docket No. 15 at 107, Jenkins Depo. at 23; Docket No. 21-1 at 33, Jenkins Depo. at 35.) Plaintiff was taken to the hospital by ambulance. (Docket No. 21-1 at 57, Plaintiff's Depo. at 38.) Jenkins signed a "Supplemental Slip/Fall Incident Report," in which he stated that Plaintiff fell on a speed bump in the parking lot in front of the pharmacy. He reported that Plaintiff was wearing tennis shoes. (Docket No. 15 at 94.)

Jenkins did not see any foreign objects in the parking lot. In the area where Plaintiff fell, Jenkins noticed a slight rise in the pavement running out from the curbing in front of the pharmacy, but no one had fallen there or complained about the area before, and he was not even aware of the rise in the pavement until Plaintiff's fall. Although someone referred to the rise as a

3

speed bump, Jenkins testified he did not think it was a speed bump. He thought it might be wiring or plumbing running out from the store. No parking lot that Jenkins is familiar with is perfectly smooth, and in his view there are going to be bumps in any parking lot. Jenkins had previously walked most of the parking lot at different times, and he had conducted visual inspections of the parking lot, but he did not know what he would have done to make the area any safer. Kroger's Facility Engineering Department in Nashville is primarily responsible for resurfacing and striping the parking lot on a regular basis, and they inspect the store property inside and out on an annual basis. (Docket No. 16 at 23-26, Jenkins Depo. at 27, 29, 51, 56; Docket No. 21-1 at 23, 84-85, 90-91, 96, Jenkins Depo. at 10-11, 29, 37, 45-46.)

Kroger co-manager Janet Van Dyke was also on duty the morning of Plaintiff's fall. Van Dyke had been employed at the Kroger store for about eighteen months. After Duncan informed her that someone had fallen in the parking lot, Van Dyke walked to the parking lot to take Plaintiff's statement and obtain her contact information. (Docket No. 15 at 100-101, Van Dyke Depo. at 7, 11; Docket No. 21-1 at 62, Van Dyke Depo. at 6.) Van Dyke completed a "Customer Incident Report & Investigation Check List." (Docket No. 15 at 92.) The attached "Customer's Description Of Incident" stated that Plaintiff "tripped on a bump in the parking lot and fell forward to the pavement." (Docket No. 15 at 93.)

After Plaintiff left, Van Dyke took photographs of the parking lot and preserved the surveillance video (not in the record), which showed Plaintiff losing her balance and falling in the parking lot. (Docket No. 15 at 92, 96-97.) The only thing Van Dyke noticed was a linear strip across the lane of traffic that was about ten feet long and flat at one end, with a very low rise in the pavement. When Van Dyke orally filed her incident report with risk management personnel, she referred to the area as a cut-down speed bump.

Van Dyke walks over the same general area of the parking lot nearly everyday going to and from the store. She did not notice the bump in the parking lot before Plaintiff's fall, and she could see it only by getting down on the ground and looking carefully. She took measurements on the morning of her deposition and found the bump to be 16 inches wide and three-quarters of an inch high at its highest point. Van Dyke does not believe the area was unsafe because, to her knowledge, nothing unusual had happened there previously. She agreed, however, that the parking lot is usually very busy, and a person crossing from the parking spaces to the store must be aware of her surroundings. She has had to slow down and watch for traffic while walking in the parking lot. (Docket No. 16 at 15-19, Van Dyke Depo. at 15, 17-18, 21, 32; Docket No. 21-1 at 9, 11, 142-43, Van Dyke Depo. at 14, 16, 24-25.)

### III. Analysis

A. The Standards for Considering Summary Judgment

Summary judgment must be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). To prevail, the moving party must establish the absence of a genuine issue of material fact as to an essential element of the opposing party's claims. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The non-moving party must go beyond the pleadings and produce specific facts requiring a trial. Chao v. Hall Holding Co., 285 F.3d 415, 424 (6th Cir. 2002). The Court's function is not to weigh the evidence, but to draw all reasonable factual inferences in the light most favorable to the non-moving party and determine if there is a genuine issue of material fact for trial. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); Little Caesar Enter., Inc. v. OPPCO, LLC, 219 F.3d 547, 551 (6th Cir. 2000).

B. The Plaintiffs' Negligence Claims

Kroger makes three arguments in support of its summary judgment motion.  First, it contends that it did not owe a duty of care to Plaintiff because her injury in the parking lot reasonably could not have been foreseen.  Even if a duty of care existed, Kroger contends it did not have actual or constructive notice of a dangerous condition in the parking lot and therefore, it did not breach the duty.  Finally, Kroger claims that, even if Plaintiff can prove the elements of a negligence case, her comparative negligence was equal to or greater than Kroger's negligence and she cannot recover damages.

Business proprietors are not insurers of their customers' safety, but they are required to use due care under all the circumstances.  Blair v. West Town Mall, 130 S.W.3d 761, 764 (Tenn. 2004).  Premises liability stems from the proprietor's superior knowledge of the condition of the premises.  Ogle v. Winn-Dixie Greenville, Inc., 919 S.W.2d 45, 46 (Tenn. Ct. App. 1995).

The elements of negligence in a Tennessee diversity case are:  (1) a duty of care owed to the plaintiff by the defendant; (2) conduct of the defendant falling below the standard of care amounting to a breach of the duty; (3) an injury or loss; (4) causation in fact; and (5) proximate causation.  Rice v. Sabir, 979 S.W.2d 305, 308 (Tenn. 1998).  The duty of care is a question of law for the Court to decide.  Kellner v. Budget Car and Truck Rental, Inc., 359 F.3d 399, 403 (6th Cir. 2004).  Additionally, the plaintiff has the burden to prove that: (1) the condition was caused or created by the owner, operator, or his agent, or (2) if the condition was created by someone other than the owner, operator, or his agent, that the owner or operator had actual or constructive notice that the condition existed prior to the accident.  Blair, 130 S.W.3d at 764.  Constructive notice can be shown by proof that the dangerous or defective condition existed for such a length of time that the defendant, in the exercise of reasonable care, should have become aware of the condition.  Id.

The Court concludes as a matter of law that Kroger owed Plaintiff a duty to keep its parking lot in a reasonably safe condition, including removing or warning of any latent, dangerous conditions that it was aware of or should have been aware of through reasonable diligence, even if the dangers could be characterized as open and obvious to pedestrians. McCall v. Wilder, 913 S.W.2d 150, 153-54 (Tenn. 1995); Coln v. City of Savannah, 966 S.W.2d 34, 39 (Tenn. 1998), *overruled on other grounds*, Cross v. City of Memphis, 20 S.W.3d 642, 644 (Tenn. 2000); Lawson v. Edgewater Hotels, Inc., 167 S.W.3d 816, 823 (Tenn. Ct. App. 2004). It was reasonably foreseeable to Kroger that a pedestrian leaving or approaching the store who was unfamiliar with all or part of the parking lot configuration would be focused on watching traffic, that the traffic could distract the pedestrian from noticing the rise in the pavement, and that the pedestrian could trip and fall due to the higher elevation of the pavement. See Coln, 966 S.W.2d at 41; Kenning v. HCA Health Servs., No. M1998-00482-COA-R3-CV, 1999 WL 1206687 at *4 (Tenn. Ct. App. Dec. 17, 1999) (finding defendant owed duty of care where 1 1/4" deviation in level of surfaces on concrete drive-through was not brightly painted and created foreseeable probability of harm). The facts here are unlike the facts in other cases cited by Kroger where no duty was found. Cf. Eaton v. McLain, 891 S.W.2d 587, 595 (Tenn. 1994) (holding, before Coln, that there was no duty to warn overnight guest of relocated basement stairway because it would have been obvious if plaintiff had exercised ordinary care); Minias v. Historic Hotels of Nashville, No. 3:07-0623, 2008 WL 2437734 at * (M.D. Tenn. June 13, 2008) (finding no duty where plaintiff fell off standard sidewalk curb painted bright yellow).

Having found that Kroger owed Plaintiff a duty of care, genuine issues of material fact exist for trial as to whether Kroger breached the duty. Sufficient evidence is produced to require a jury to decide if the area on which the Plaintiff fell was a speed bump or something else. The jury must consider whether the linear area, which measured ten feet long by sixteen inches wide,

7

and with a smooth elevation to a height of 3/4", lying across the lanes of traffic near the pharmacy drive-through, is consistent with a speed bump designed to slow traffic, or a speed bump that was later cut down, or something else entirely. Kroger personnel themselves characterized the linear area as a speed bump at the time of Plaintiff's fall, but during their deposition testimony they tried to disclaim their earlier characterizations of the area as a speed bump, and Jenkins suggested the rise in the pavement covered plumbing or wiring running from the store. The discrepancies in the statements of the Kroger witnesses only serve to fuel the creation of a genuine issue of material fact for trial.

Assuming a jury could reasonably find that the linear area was a speed bump that had some utility in slowing traffic, the jury would also have to consider whether the speed bump was in a dangerous or defective condition and whether Kroger breached its duty to ensure that the speed bump did not pose an unreasonable risk of harm to pedestrians. See Lawson, 167 S.W.3d at 824; Coln, 966 S.W.2d at 37. Plaintiff produced evidence that the speed bump was not painted bright yellow to attract a pedestrian's attention and to differentiate its elevation from the surrounding black pavement. In addition, there were no signs warning pedestrians of the speed bump, nor was there a painted crosswalk in front of the store directing pedestrians to a safe route of travel. Thus, the disputed facts here are dissimilar from other cases Kroger cites in support of its position that the parking lot was in a reasonably safe condition. Cf. Dillard v. Vanderbilt Univ., 970 S.W.2d 958, 960 (Tenn. Ct. App. 1998) (holding tire stop painted bright yellow and situated out of the normal flow of pedestrian traffic in a parking garage was not a latent dangerous condition); Ball v. G.W. Hubbard Hosp. of Meharry Medical College, No. 01-A-01-9508-CV-00384, 1996 WL 165096 at *4 (Tenn. Ct. App. Apr. 10, 1996) (finding landowner satisfied duty of care to pedestrian where garage exit contained no physical impediment to safe passage and plaintiff failed to look where she was going); Smid v. St. Thomas Hosp., 883

S.W.2d 632, 634-35 (Tenn. Ct. App. 1994) (finding plaintiff did not encounter unknown or hidden risk when he stepped backward and tripped over moveable stairs because he was familiar with stairs and knew where they were located); Herbison v. Hansen Chrysler-Plymouth, Inc., No. 01A01-9710-CV-00594, 1998 WL 485668 at *3 (Tenn. Ct. App. Aug. 19, 1998) (finding no liability where frequent visitor to auto parts shop had adequate opportunity to familiarize himself with nature of pathway and was merely inattentive when he tripped over protruding door track).

Plaintiff also produced sufficient evidence to require a jury to determine whether Kroger had actual notice of the bump in the pavement or whether it had existed a sufficient length of time that Kroger had constructive notice of it. A jury reasonably could find that Kroger had actual notice of the bump because it owned the parking lot, Jenkins inspected the parking lot regularly, and Kroger's Facility Engineering Department inspected, resurfaced and striped the parking lot on a periodic basis. The jury would also have to determine, in light of the photographic evidence, whether Jenkins, Van Dyke, and Duncan were credible when they testified they could not see the bump when they walked on the parking lot, but rather, they had to get down on the ground to see the rise in elevation.

Alternatively, a reasonable jury could decide that Kroger had constructive notice of the bump. Van Dyke crossed over the speed bump nearly every day walking from her car to the store. Duncan drove over the bump for two years and felt the bump as he drove. This evidence gives rise to an inference that Kroger had constructive knowledge of the bump prior to the day Plaintiff fell. See Williams v. Linkscorp Tennessee Six, L.L.C., 212 S.W.3d 293, 296 (Tenn. Ct. App. 2006) (holding golf course should have known that moss growing on railroad tie steps created pedestrian hazard given the slippery nature of moss and time required for it to grow). Moreover, there is no evidence that the bump's condition changed during the two years Duncan drove over it. Thus, this situation differs from Thompson v. Ruby Tuesday, Inc., No. M2004-

9

01869-COA-R3-CV, 2006 WL 468724 at *8 (Tenn. Ct. App. Feb. 27, 2006), where the court held that the plaintiff failed to show that a speed bump was broken slowly over time so that the parking lot owner had constructive notice of the damage before the plaintiff fell. This case is also not like White v. Bi-Lo, LLC, No. M2007-02698-COA-R3-CV, 2008 WL 4415781 at *5 (Tenn. Ct. App. Sept. 26, 2008), where the court held the plaintiff failed to prove that a grocery store had constructive notice of a spice bottle on the aisle floor where a store report confirmed that the aisle was inspected and free of debris less than twenty minutes before plaintiff fell.

Finally, whether Plaintiff was negligent because she watched passing traffic rather than the ground where she walked, and if so, whether her negligence was fifty percent or greater than any negligence of Kroger is a classic jury question that cannot be resolved on this summary judgment record. Two cases Kroger cites are inapposite because they involved far different facts. Cf. Berry v. Houchens Market, 253 S.W.3d 141, 148 (Tenn. Ct. App. 2007) (holding plaintiff was at least fifty percent negligent for her fall in parking lot because she had a duty to see what was in plain sight–a large, black puddle of oil); Whiteaker v. City of Cookeville, No. M1999-00732-COA-R3-CV, 2000 WL 863446 at *1 (Tenn. Ct. App. June 29, 2000) (holding plaintiff at least sixty-five percent negligent where, even if slight rise between two sections of sidewalk was a danger to public, plaintiff admitted she saw the uneven joint when stepping and fell anyway).

In light of the Court's analysis, there is no need to reach Plaintiff's additional argument that she can show liability under the doctrine of *res ipsa loquitur.*

### IV. CONCLUSION

For the reasons set forth above, Kroger's Motion For Summary Judgment (Docket No.

10
Case 1:09-cv-00064   Document 26   Filed 08/26/10   Page 10 of 11 PageID #: 524

14) is denied.

       IT IS SO ORDERED.

_____
TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE